Slip Op. 16-99

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SOLARWORLD AMERICAS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> JINKO SOLAR IMPORT & EXPORT CO., LTD. ET AL., <br><br> Defendant-Intervenors. | Before: Claire R. Kelly, Judge <br><br> Court No. 15-00232 |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's final determination in the first administrative review of the countervailing duty order covering crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China.]

Dated: October 14, 2016

Timothy C. Brightbill, Laura El-Sabaawi, and Usha Neelakantan, Wiley Rein, LLP, of Washington, DC, for plaintiff.

Justin Reinhart Miller, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant.  With him on the brief were Melissa Marion Devine, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Commercial Litigation Branch – Civil Division, of Washington, DC, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.  Of Counsel on the brief was Lisa W. Wang, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Neil R. Ellis, Richard L.A. Weiner, Rajib Pal, Shawn Michael Higgins, and Justin Ross Becker, Sidley Austin, LLP, of Washington, DC, for defendant-intervenors.

Kelly, Judge:  This action comes before the court on a USCIT Rule 56.2 motion for judgment on the agency record challenging the U.S. Department of Commerce's ("Department" or "Commerce") determination in the first administrative review of the countervailing duty order covering crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China ("China").  See SolarWorld's Mot. J. Agency R., Feb. 12, 2016, ECF No. 24; Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China, 80 Fed. Reg. 41,003 (Dep't Commerce July 14, 2015) (final results of countervailing duty administrative review; 2012) and accompanying Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review: Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China, Oct. 13, 2015, ECF No. 21-2 ("Final Decision Memo"); see also Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China, 77 Fed. Reg. 73,017 (Dep't Commerce Dec. 7, 2012) (countervailing duty order).

Plaintiff, SolarWorld Americas, Inc. ("SolarWorld"), commenced this action pursuant to section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a (2012).[1]  See Summons, Aug. 12, 2015, ECF No. 1.  The court granted a consent motion to intervene made by Jinko Solar Import & Export Co., Ltd., JinkoSolar International Limited, and Jinko Solar Co. Ltd. (collectively "Jinko Solar").  See Order, Sept. 25, 2015,

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

ECF No. 19; see also Consent Mot. Intervene Jinko Solar Import and Export Co., Ltd., JinkoSolar International Ltd., and Jinko Solar Co., Ltd., Sept. 24, 2015, ECF No. 14. Defendant filed a response, and Jinko Solar filed a response as defendant-intervenors supporting Defendant's arguments. See Def.'s Opp'n Pl.'s Mot. J. Upon Administrative R., May 10, 2016, ECF No. 26 ("Def.'s Resp. Br."); Resp. Def.-Intervenors Jinko Solar Co., Ltd., et al. to SolarWorld Americas, Inc.'s Mot. J. Agency R., May 20, 2016, ECF No. 30. After SolarWorld filed a reply brief, see Pl. SolarWorld Americas, Inc.'s Reply Br., June 22, 2016, ECF No. 31, the court filed a letter with additional questions for the parties. See Letter filed by the Court, July 20, 2016, ECF No. 33 ("Court's Supplemental Questions"). Briefing in the matter concluded when the parties filed supplemental briefs responding to the court's questions on September 2, 2016. See Pl. SolarWorld Americas, Inc.'s Suppl. Br., Sept. 2, 2016, ECF No. 41 ("Pl.'s Suppl. Br."); Def.'s Suppl. Br. Regarding Hierarchy for Selecting Adverse Facts Available Rates, Sept. 2, 2016 ("Def.'s Suppl. Br."), ECF No. 40; Suppl. Br. Def.-Intervenors Jinko Solar Co., Ltd., et al. Resp. Questions Presented by Judge Kelly, Sept. 2, 2016, ECF No. 42.

## BACKGROUND

On February 3, 2014, Commerce initiated its administrative review covering subject imports entered during the period of review March 26, 2012 through December 31, 2012. See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 79 Fed. Reg. 6,147, 6,149–57 (Dep't Commerce Feb. 3, 2014). Commerce selected Lightway Green New Energy Co., Ltd. ("Lightway") and Shanghai BYD Co., Ltd. as mandatory respondents, initially assigning them

countervailable subsidy rates of 22.73 percent and 8.63 percent, respectively. <u>Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China</u>, 80 Fed. Reg. 1,019, 1,019–20 (Dep't Commerce Jan. 8, 2015) (preliminary results of countervailing duty administrative review; 2012; and partial rescission of countervailing duty administrative review).

During the countervailing duty investigation, SolarWorld alleged in its petition that the Government of China ("GOC"), through its Export-Import Bank ("China Ex-Im Bank"), provided credits to export buyers in the form of medium and long-term loans with preferential, low interest rates to buyers of goods used in certain energy projects, including solar cells ("Export Buyer's Credit Program").  See <u>Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China</u>, 77 Fed. Reg. 63,788, 63,789 (Dep't Commerce Oct. 17, 2012) (final affirmative countervailing duty determination and final affirmative critical circumstances determination); <u>see also</u> Issues and Decision Memorandum for the Final Determination in the Countervailing Duty Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China at 59, C-570-980, (Oct. 9, 2012), <u>available at</u> http://ia.ita.doc.gov/frn/summary/prc/2012-25564-1.pdf (last visited October 11, 2016) ("Original Investigation Final Determination").  Commerce determined that the Export Buyer's Credit Program is countervailable, and Commerce

Court No. 15-00232 Page 5

applied adverse facts available ("AFA")[2] to select a rate of 10.54 percent to this program. Original Investigation Final Determination at 64.

In its final determination in this administrative review, Commerce applied AFA to the Export Buyer's Credit Program because it could not verify that respondents had not used export buyer's credits, as the GOC claimed in its questionnaire responses. Final Decision Memo at 33 (citing Memorandum re: Verification of the Questionnaire Responses Submitted by the Government of the People's Republic of China at 4–7, PD 255, bar code 3269089-01 (Apr. 6, 2015)).[3] Commerce applied an AFA rate of 5.46 percent to the same Export Buyer's Credit Program.[4] Final Decision Memo at 44. Commerce selected this rate because it corresponds to the highest rate calculated for Lightway for the Preferential Policy Lending to the Renewable Energy Industry program, which Commerce considered similar and comparable to the China Ex-Im Bank Export Buyer's Credit Program. Id.

---

[2] Although 19 U.S.C. § 1677e(a)–(b) and 19 C.F.R. § 351.308(a)–(c) (2014) each separately provide for the use of facts otherwise available and the subsequent application of adverse inferences to those facts, Commerce uses the shorthand "adverse facts available" or "AFA" to refer to its use of such facts otherwise available with an adverse inference. See, e.g., Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China at 6, 15, 20–32, PD 198, bar code 3250557-01 (Jan. 5, 2015); Final Decision Memo at 3, 4, 13–20, 32–33, 42–44, 57–59.

[3] On October 13, 2015, Defendant submitted indices to the confidential and public administrative records, which can be found at ECF Nos. 21-4 and 21-5, respectively. All further documents from the administrative record may be located in those appendices.

[4] In its preliminary determination, Commerce preliminarily found that respondents did not benefit from the Export Buyer's Credit Program. Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China at 36–41, C-570-980, (Dec. 31, 2014), available at http://ia.ita.doc.gov/frn/summary/prc/2015-00110-1.pdf (last visited October 11, 2016).

SolarWorld challenges Commerce's determination to countervail the China Ex-Im Bank's Export Buyer's Credit Program at an AFA rate of 5.46 percent as unsupported by substantial evidence and otherwise contrary to law. Br. Supp. Pl. SolarWorld Americas, Inc.'s Rule 56.2 Mot. J. Agency R. 9–20, Feb. 12, 2016, ECF No. 24 ("SolarWorld Br."). Defendant responds that Commerce followed its practice of selecting an AFA rate to apply in administrative reviews. Def.'s Resp. Br. 8–18. For the reasons that follow, the court remands Commerce's selection of an AFA rate of 5.46 percent for the Export Buyer's Credit Program for further explanation or reconsideration.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c) (2012), which grant the court authority to review actions contesting the final determination in an administrative review of a countervailing duty order. "The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

SolarWorld argues that Commerce's application of an AFA rate of 5.46 percent to the China Ex-Im Bank's Export Buyer's Credit Program is unreasonable, inconsistent with prior agency practice, and otherwise contrary to law. SolarWorld Br. 9–20. Specifically, SolarWorld argues that Commerce unreasonably selected an AFA rate of 5.46 percent in this review when it applied an AFA rate of 10.45 percent to the same program in the original investigation. Id. at 5–6. Defendant responds that Commerce followed its

Court No. 15-00232                                                                                                Page 7

established practice in administrative reviews of selecting the highest non-de minimis calculated rate for a similar program from the same proceeding where there is no calculated rate for any respondent in the review benefiting from the identical program. Def.'s Resp. Br. 8–18.  Although Commerce has considerable discretion in developing a methodology to select an AFA rate, its rate selection methodology in administrative reviews differs materially from that applied in investigations.  See Final Decision Memo at 44; Original Investigation Final Determination at 64.  In this administrative review, that difference in methodologies resulted in Commerce applying a lower AFA rate to the same program in this administrative review than it did in the initial investigation.  See Final Decision Memo at 44; Original Investigation Final Determination at 64.  Commerce may have a reasonable rationale for its differing methodologies, but it failed to explain its logic in this review.  On remand, Commerce must do so or reconsider its determination.

If, in the course of a countervailing duty proceeding, an interested party or any other person provides information to Commerce that cannot be verified, Commerce shall use facts otherwise available in making its determination.  19 U.S.C. § 1677e(a)(2)(D).[5]

---

[5] On June 29, 2015, President Obama signed the Trade Preferences Extension Act of 2015 ("TPEA"), which made numerous amendments to the countervailing duty law.  See Trade Preferences Extension Act of 2015, Pub. L. No. 114-27, 129 Stat. 362 (2015).  Section 502 of the TPEA amends 19 U.S.C. § 1677e to add subsection (d), which provides generally that an AFA countervailable subsidy rate applied in countervailing duty proceedings should be applied for the same or similar program involving the same country or for a proceeding Commerce considers reasonable to use.  See 19 U.S.C. § 1677e(d)(1)(A)(i)–(ii) (2015).  Although the TPEA does not provide for an effective date, the Court of Appeals for the Federal Circuit has held that Section 502 of the TPEA has prospective effect and "unambiguously applies only to Commerce determinations made after the date of enactment."  Ad Hoc Shrimp Trade Action Committee v. United States, 802 F.3d 1339, 1352 (Fed. Cir. 2015).  No party argues that the new law should

(footnote continued)

Commerce may apply an adverse inference in selecting from among the facts otherwise available where it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with [its] request for information." 19 U.S.C. § 1677e(b). When applying an adverse inference, Commerce may rely on information derived from the petition, a final determination in the investigation, any previous review, or any other information placed on the record. 19 U.S.C. § 1677e(b)(1)–(4); 19 C.F.R. § 351.308(c)(1)(i)–(iii) (2014).[6]

Where Commerce countervails a subsidy program at an AFA rate, neither the statute nor the regulation dictate how Commerce is to determine that rate.[7] See 19 U.S.C. § 1677e(b)(1)–(4); 19 C.F.R. § 351.308(c)(1). Therefore, Commerce has considerable discretion to develop a methodology for calculating an AFA rate derived from one of the sources listed in the statute. An AFA rate selected by Commerce must also reasonably balance the objectives of inducing compliance and determining an accurate rate. See F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (holding the corroboration requirement tempers the deterrent value of an AFA rate to prevent overreaching reality to maximize deterrence). The statute does not

---

apply in this proceeding. See SolarWorld Br. 6–8; Def.'s Resp. Br. 8 n.2. The amendments to the statute are not implicated because they merely list the possible sources Commerce may look to for selecting an AFA rate. 19 U.S.C. § 1677e(d)(1)(A)(i)–(ii) (2015). The statute does not address the question of selecting from among possible AFA rates, which is the question at the heart of SolarWorld's challenge here.

[6] Further citations to Title 19 of the Code of Federal Regulations are to the 2014 edition.

[7] The court does not review Commerce's decision to apply AFA in the first instance because no party challenges that decision. See SolarWorld Br. 15.

require Commerce to favor any single source from among the list of possible sources on which it could base its adverse inference. See 19 U.S.C. § 1677e(b)(1)–(4).

In administrative reviews, Commerce has developed a methodology for selecting an AFA rate to countervail a subsidy program according to a hierarchy of sources. For subsidy programs not involving income tax exemptions and reductions, Commerce first applies the highest calculated rate for the identical program in the same proceeding if another responding company used that program. Final Decision Memo at 44 (citing Aluminum Extrusions from the People's Republic of China, 79 Fed. Reg. 78,788 (Dep't Commerce Dec. 31, 2014) (final results of the countervailing duty administrative review; 2012); Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review: Aluminum Extrusions from the People's Republic of China at 15–16, C-570-968, (Dec. 22, 2014), available at http://ia.ita.doc.gov/frn/summary/prc/2014-30659-1.pdf (last visited October 11, 2016) ("Aluminum Extrusions from PRC I&D")). Second, if no other company in the review used the identical program, Commerce's practice is to use the highest calculated non-de minimis rate for a similar program in the same proceeding. Id. (citing Aluminum Extrusions from PRC I&D 15–16). Third, if there is no identical or similar program match in the CVD proceeding at issue, Commerce uses the highest rate calculated for an identical program in another CVD proceeding involving the same country. Id. (citing Aluminum Extrusions from PRC I&D 15–16). Last, in the absence of an identical program in another CVD proceeding involving the country at issue, Commerce uses the highest calculated rate from a similar program in another CVD proceeding involving the country at issue. Id. Defendant suggests Commerce's

methodology reflects a preference in an administrative review for a similar program in an earlier segment of the same proceeding because it has a stronger relation to the respondent's prior commercial activity. See Def.'s Resp. Br. 13 (citing Sodium Nitrite From the People's Republic of China, 73 Fed. Reg. 38,981, 38,982 (Dep't Commerce July 8, 2008) (final affirmative countervailing duty determination) ("Sodium Nitrite from the PRC")).

Here, noting that it lacked a calculated rate for the Export Buyer's Credit Program from another responding company, Commerce applied the second level of its AFA rate selection hierarchy for administrative reviews. See Final Decision Memo at 44. Thus, it selected the rate calculated for the Preferential Policy Lending to the Renewable Energy Industry program in this same administrative review to the Export Buyer's Credit Program after determining that the two programs were similar.[8] Id. Commerce supported its determination that the programs were similar, noting that both programs call for financial institutions to provide loans at preferential rates. Id. at 27, 33.

SolarWorld argues that, in the absence of a calculated rate for the identical subsidy program in the same proceeding, Commerce's AFA rate selection hierarchy in administrative reviews arbitrarily favors a rate derived from a similar or comparable

---

[8] SolarWorld does not challenge Commerce's determination that the Preferential Policy Lending to the Renewable Energy Industry program is similar to the Export Buyer's Credit Program. SolarWorld Br. 15. Rather, it argues that Commerce failed to explain its reasoning in concluding the programs were similar. Id. The court considers Commerce's logic in considering the programs similar reasonably discernible because both loan programs perform similar functions in support of Chinese industry by offering lower interest rates on loans than would otherwise be available to these companies. SolarWorld offers no record evidence indicating that the loans have an effect other than supporting Chinese industry.

program within the same proceeding before looking to identical programs in other proceedings involving the same country, as Commerce does in investigations.[9] SolarWorld Br. 17–18; SolarWorld Reply Br. 6–8. Defendant supports Commerce's AFA rate selection hierarchy as a means to reasonably balance the interests of inducing compliance with assuring the rate has a strong relation with respondent's prior commercial activity. Def.'s Resp. Br. 13 (citing Sodium Nitrite From the PRC, 73 Fed. Reg. at 38,982). Although Commerce's hierarchy in reviews, when viewed in isolation, may reasonably balance deterrence against accuracy, Commerce's AFA rate selection hierarchies in investigations and administrative reviews both must balance these same interests. Therefore, Commerce must provide a reasonable explanation for implementing different hierarchies in reviews than in investigations.

Defendant acknowledges that, in the absence of data pertaining to an identical program in the same proceeding, Commerce's AFA rate selection methodology in administrative reviews, unlike in investigations, looks for similar or comparable programs in any segment of the same proceeding before moving on to find identical programs in another proceeding. Def.'s Resp. Br. 12. Defendant explains the distinction by focusing

---

[9] SolarWorld argues Commerce's methodology in administrative reviews is fundamentally at odds with its methodology in investigations. SolarWorld Br. 14–18. Commerce's AFA rate selection hierarchy in an original investigation is to first select the highest calculated rate for the identical program in the same proceeding if another responding company used the identical program. SolarWorld Br. 16 (citing Original Investigation Final Determination at 64). If there is no calculated rate for the identical program in the same proceeding, Solar World argues Commerce looks for a non de minimis rate for the identical program in another CVD proceeding involving the same country. Id. at 16-17 (citing Original Investigation Final Determination at 64). If there is no identical program match in any CVD proceeding involving the same country, SolarWorld argues Commerce uses the highest calculated rate for a similar program in another CVD proceeding involving the same country. Id. (citing Original Investigation Final Determination at 64).

on the more limited availability of calculated rates in an investigation. See id. at 13 (citing Sodium Nitrite From the PRC, 73 Fed. Reg. at 38,982). This explanation implies that Commerce prefers rates from the same proceeding but Commerce has fewer such rates in an investigation. However, it does not address why, in an investigation where Commerce does have a calculated rate for a similar subsidy program on the record, Commerce would prioritize an identical program from another proceeding over a similar program from the same proceeding.[10] In fact, Defendant's explanation would suggest that Commerce should prefer a rate calculated for a similar program from the same proceeding over an identical program from a different proceeding in an investigation. Moreover, Commerce's methodology for selecting an AFA rate in an investigation does look for a calculated rate for an identical programs in the same proceeding. Original Investigation Final Determination at 64. Yet, Commerce does not explain why its review AFA rate selection hierarchy prefers a rate calculated for a similar subsidy program in the same review over that of an identical program in a different proceeding involving the same country under investigation, while its hierarchy in investigations does not. Although Commerce's AFA rate selection methodology in investigations is not before the court in this action, it is a well-established rule that "an agency action is arbitrary when the agency

---

[10] SolarWorld points out that, in Commerce's investigation, Commerce had a calculated rate for the same Preferential Policy Lending to the Renewable Energy Industry program it considered comparable in this administrative review on the record. SolarWorld Br. 17 (citing Original Investigation Final Determination at 12). Yet, SolarWorld points out that Commerce "did not select that rate as the AFA rate for the Ex-Im Bank Buyer's Credit program in the original investigation. Rather, the agency relied upon a 10.54 percent rate for a similar subsidy program calculated in another proceeding as the AFA rate." Id. (citing Original Investigation Final Determination at 12).

Court No. 15-00232                                                                                          Page 13

offer[s] insufficient reasons for treating similar situations differently." SKF USA Inc. v. United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001).

Where Commerce lacks a calculated rate to use as AFA for an identical program in the same proceeding, Commerce may have a reasonable basis to look to a rate selected as AFA from a similar program in the same proceeding in a review while preferring a rate selected as AFA from an identical program in another proceeding involving the same country in an investigation. However, Commerce must explain why its disparate AFA rate selection practices in administrative reviews versus investigations is reasonable. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co., 463 U.S. 29, 43 (1983). It did not do so in its final determination in this administrative review.[11] If Commerce grounds the difference in practice in methodological distinctions

---

[11] Defendant argues that Commerce did not address why it balances these interests differently in investigations versus reviews because this issue was not raised in the course of the administrative proceeding. Def.'s Suppl. Br. 6. In SolarWorld's case brief before the agency, it cited Commerce's AFA rate selection hierarchy in investigations, and argued that Commerce should apply a rate of 11.83 percent assigned to a respondent in another proceeding involving China for a debt forgiveness subsidy program because that program is similar to the Export Buyer's Credit Program. SolarWorld Americas, Inc. Case Brief at 15–16, CD 220, bar code 3273849-01 (Apr. 30, 2015) ("SolarWorld Case Brief"). In the alternative, SolarWorld argued that Commerce should "select a rate of 10.54 percent as the AFA rate for this program, consistent with its practice in prior investigations." Id. This argument also advocated that Commerce apply its investigation rate hierarchy to use the highest calculated rate from a similar program in another proceeding involving China. See id.

From these arguments, the court discerns that SolarWorld did raise the issue of the application of its AFA rate selection hierarchy in investigations. See id. Commerce had not found the Export Buyer's Credit Program countervailable in its preliminary determination. See Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China at 36–41, PD 198, bar code 3250557-01 (Jan. 5, 2015). Therefore, Commerce had not assigned an AFA rate to the program prior to its final determination, see id. at 41, and

(footnote continued)

between how it conducts administrative reviews as opposed to investigations, it must connect those distinctions to the differing methodologies. To the extent that Commerce balances the interests of rate accuracy with inducing compliance differently in reviews versus investigations, Commerce must explain on remand why that discrepancy is reasonable or it must reconsider its methodology.

Defendant concedes that this issue was not addressed by Commerce in its final determination, but Defendant provides an explanation for the difference in methodologies. Def.'s Suppl. Br. 6. In response to the court's question to Defendant on this issue, see Court's Supplemental Questions at 3–4, Defendant explains that, in reviews, "Commerce's AFA hierarchy prioritizes an inquiry into the subsidization experience of *the industry at issue* by its government, rather than an inquiry into the use of the identical program by any industry." Def.'s Suppl. Br. 4. Defendant further explains that a rate from within the industry (i.e., from within the same proceeding) for a similar program has a stronger relationship to the respondent's likely prior commercial activity than a rate from a different industry obtained from outside the proceeding. Id. (citing Sodium Nitrite From the PRC, 73 Fed. Reg. at 38,982).

---

SolarWorld's arguments implicating Commerce's methodology in investigations at the administrative level are sufficient to raise the issue that Commerce's methodology in investigations and reviews differs. At the time SolarWorld filed its administrative case brief, SolarWorld could not have anticipated how Commerce would apply its rate selection hierarchy or that its application would differ, resulting in a lower rate than that applied in the investigation.

Defendant requests remand for Commerce to further explain its AFA hierarchy practice in the event the court determines Commerce should have addressed the difference in AFA hierarchies between investigations and administrative reviews. Def.'s Suppl. Br. 6–7. Since the court finds the issue was raised before the agency, Commerce must provide an explanation or reconsider its determination. Therefore the court remands for the agency to do so.

In contrast, Defendant continues, "Commerce's purpose in an investigation is to achieve an overarching understanding of how the industry under investigation uses subsidies." Id. at 5. Defendant observes that, given the limited information available to Commerce in an investigation pertaining to the industry's use of subsidies, Commerce focuses on the program rather than the industry where it lacks an available rate for the same proceeding. Id.

Defendant argues that Commerce has previously explained its AFA hierarchies extensively, and it argues that the explanations provided by Defendant are reasonably discernible from Commerce's explanations in other proceedings, which have been affirmed by the Court and the Court of Appeals for the Federal Circuit. Def.'s Suppl. Br. 6. (citing Essar Steel Ltd. v. United States, 37 CIT __, __, 908 F. Supp. 2d 1306, 1310 (2013), aff'd 753 F.3d 1368 (Fed. Cir. 2014); Fengchi Imp. & Exp. Co. of Haicheng City v. United States, 39 CIT __, __, 59 F. Supp. 3d 1386, 1396 (2015); Tai Shan City Kam Kiu Aluminium Extrusion Co. v. United States, 39 CIT __, __, 125 F. Supp. 3d 1337, 1342 n.7 (2015)). Although the cases referenced by Defendant independently affirm Commerce's practices for AFA rate selection in reviews and investigations, none explain or affirm Commerce's rationale for having different AFA rate selection practices in investigations versus administrative reviews. See Essar Steel, 37 CIT at __, 908 F. Supp. 2d at 1310–11 (affirming Commerce's application of the second step of its AFA rate selection hierarchy in an administrative review because the program identified in the investigation is similar); Fengchi, 39 CIT at __, 59 F. Supp. 3d at 1396 (affirming Commerce's application of the second step of its AFA rate selection hierarchy in an

administrative review because the program identified in the investigation is similar); Tai Shan City Kam Kiu, 39 CIT at __, 125 F. Supp. 3d at 1342 n.7 (reciting Commerce's AFA rate selection hierarchy in administrative reviews).  Defendant's explanations are post hoc rationalizations.  On remand, Commerce must explain why these differences in methodology are reasonable or reconsider its methodology.

## CONCLUSION

In accordance with the foregoing, it is hereby

**ORDERED** that this action is remanded to Commerce to clarify or reconsider, as appropriate, its AFA rate selection hierarchy as applied in this administrative review; and it is further

**ORDERED** that Commerce shall file its remand redetermination with the court within 60 days of this date; and it is further

**ORDERED** that the parties shall have 30 days thereafter to file comments on the remand redetermination; and it is further

**ORDERED** that the parties shall have 15 days to file their replies to comments on the remand redetermination.

    /s/ Claire R. Kelly  
Claire R. Kelly, Judge

Dated: October 14, 2016
    New York, New York